UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

**CHRISTIAN E. SANON**                       Case No.: 8:13-bk-06282-MGW
**LOUISE MARIE SANON**

                                                           Chapter 7

      **Debtors**
_____/

**SUPPLEMENTAL BRIEF IN RESPONSE TO
UNITED STATES TRUSTEE'S MOTION FOR
RECONSIDERATION OF ORDER APPROVING APPLICATION
TO EMPLOY SPECIAL COUNSEL AND
<u>OBJECTION TO APPLICATION TO EMPLOY REALTORS</u>**

This cause came on for reconsideration of the Court's Order Approving Application to Employ the Application to employ Christie D. Arkovich, Esquire, and the firm of Christie D. Arkovich, P.A. as Special Counsel for the Trustee in the above captioned Chapter 7 (Dkt. No. 17) based upon the Chapter 7 Trustee's Application to employ special counsel to effectuate the short sale of the real property located at 1213 Belladonna Dr., Brandon, FL 33510 on behalf of the Estate as authorized by the Trustee ("the Application") (Dkt. No. 16) and the U.S. Trustee's Objection to Application to Employ Realtors (Dkt. 24).

       The Court requested supplemental briefing on two issues:

1. Whether Section 327(a) requires judicial scrutiny of the employment of Realtors as "professional persons" and whether Section 504 fee prevents sharing real estate commissions with a co-broker?

2. Whether there is any actual conflict in Ms. Arkovich completing a short sale for the bankruptcy estate when Ms. Arkovich also represents the debtor under Section 327(e)?

1

## **MEMORANDUM OF LAW**

**I.  A Realtor is not necessarily a "professional person" contemplated under Section 327(a) in that a Realtor does not play a central role in the administration of the bankruptcy estate and bankruptcy proceedings.**

This Court must first determine whether Ms. Arkovich, a Realtor with Yellow Fin Realty (the "Realtor") and Ms. Palacio, a Realtor with Charles Ruttenberg (the Co-Realtor), are "professional person(s)" under Section 327(a) of the Bankruptcy Code, which provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties under this title.

The purpose for requiring court approval of professional persons is to "avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services and expertise to beleaguered Chapter 11 debtors. *In re Bartley Lindsay Co.,* 137 B.R. 305 (D. Minn. 1991). The Bankruptcy Code itself does not contain a definition of "professional persons". There does not appear to be a consistent methodology for its determination. Some Courts, including the U.S. Bankruptcy Court for the Middle District of Florida, define a "professional person" as an individual who takes a central role in the administration of the debtor's bankruptcy estate and bankruptcy proceedings, as opposed to one who provides services to the debtor that are necessary regardless of whether the bankruptcy petition is filed. *In re Florida Airlines, Inc.*, 110 B.R. 570 (M.D. Fla. 1990) *citing In the Matter of Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D. N.Y. 1981):

**In the context of a debtor proceeding, persons in occupations ordinarily considered professions are not necessarily professionals whose retention by the estate requires court approval**. For the purposes of section 327(a), "professional person" is limited to persons in those occupations which play a **central role** in the administration of the debtor proceeding. Court approval is required for the retention of attorneys, accountants, appraisers, auctioneers and persons in other professions intimately involved in the administration of the debtor's estate. [Emphasis added].

In the case of employment of Realtors, the Court has the additional safeguard that the sale must be approved by the Court after 21 days' notice to the creditors' matrix under a Rule 363 Motion to Sell Free and Clear of Liens. Such sales must also be approved by the primary lienholder.

A Realtor has limited discretion other than the hours worked. The U.S. Trustee has requested that <u>all</u> offers received by the Realtor must be provided to the Chapter 7 Trustee for the Trustee to determine the "highest and best" offer depending upon the requirements of the Trustee. The U.S. Trustee has also requested that the MLS listing be posted for a full 21 days (presumably before the 21 day period starts running under the Motion to Sell which by necessity will include a draft HUD and executed Contract for Sale). Freddie Mac and Fannie Mae just implemented new rules in mid-July that require the MLS listing to be up for a minimum period of five days, two of which must fall on a weekend. Banks generally do not have limitations as to length of listing, instead preferring to do a broker price opinion normally with an interior inspection to establish market value. By attempting to inject these additional requirements,[1] the U.S. Trustee is removing all discretion from the Realtor further reducing the Realtor's role. See *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (discretion or autonomy in some

---

[1] The necessity of such listing requirements should be a determination for the Court and whether it wishes to implement such limitations for all Rule 363 sales across the board.

part of the debtor's estate necessary under a qualitative analysis for a determination of professional person under § 327(a)).

Section 504 permits the sharing of compensation with a member, partner, or regular associate in a professional association, corporation, or partnership. The problem with Section 504's application to employment of a Realtor is that historically in virtually all real estate transactions the six percent typical commission paid to the seller's agent under a listing agreement is shared with a co-broker for the buyer who is often with another realty company. Usually for a residential short sale transaction, the co-broker has not filed an application for employment although technically their commission is the result of the selling broker sharing their 6% commission. A strict reading of Section 504 would disallow what has been a regular occurrence if a Realtor is deemed to fall under the "professional person" definition by playing a central role in the administration of the case. Also Realtors are typically independent contractors for their Brokers which need to somehow be aligned with the "member, partner or regular associate of a professional association, corporation, or partnership" language of Section 504. If not aligned, then all Realtors who have sold property without their own Broker's license in a bankruptcy proceeding run afoul of Section 504.

Applications for co-brokers have been approved in bankruptcy courts. *U.S. v. Ruff*, 99 F.3d 1559 (11th Cir. 1996) (the U.S. Bankruptcy Court for the Middle District of Florida approved an application to employ a business broker for the bankruptcy estate under which he would receive commission to be shared equally with two other brokers previously employed by the estate). A co-broker application was initially approved in *In re Int'l Gospel Party Boosting Jesus Groups, Inc.*, 464 B.R. 78 (Bankr. Mass 2012)

*affirmed* (D. Mass. 2012) (disallowed co-broker's commission who was not acting as co-broker but was actually the principal buyer).  However, in that case, the Realtor failed to disclose that the commissions were not being shared with another agent, or even a broker for the buyer, but rather *with the buyer himself*.  The Court drew the line that the commissions could not be shared with the buyer, which it analogized as akin to a kickback.  Importantly, the Court had approved a "co-brokerage" with proper disclosure. *Id*. at 464 B.R. 85.

In conclusion, a Realtor who sells a parcel of real estate for the Chapter 7 Trustee under all the limitations presented by the Trustee, the Court (via the employment and fee applications and motion to sell) and the U.S. Trustee, really has very little if any discretion and should not be deemed to have played a central role notwithstanding the fact that the Realtor has to be licensed and may be selling the largest asset of the estate.

However, in the event that this Court considers a Realtor to be a "professional person" and thus bound by the limitations presented in Section 504 regarding the sharing of fees, one solution to this dilemma is Ms. Arkovich could move her license to the Charles Ruttenberg Agency so only one broker receives the commission on the buyer's side which is then split between its realtors who would each have their respective and non-duplicative duties in the sale.  We are still left with the sharing of fees with a buyer's agent in many cases however.  Additionally, the U.S. Trustee has argued that this would not be permissible because Charles Ruttenberg Realty is merely a place to hang a Realtor's license and it does not actually provide any services such as a conference room etc.  However, the undersigned and the Co-Realtor do not need to employ and pay large commissions to a full service brokerage.  It should not matter where Ms. Arkovich and

Ms. Palacio choose to hang their respective licenses. We both have MLS access, signage and everything we need to sell the properties. We do not need a broker's conference room, referrals, handholding, desks, open house tours, staging or anything else like that.

Alternatively, Ms. Arkovich could add Ms. Palacio to her staff to accommodate the additional workload. Even here the U.S. Trustee has argued that the Ms. Palacio would have to be an employee rather than an independent contractor. One U.S. Trustee's attorney asserts that Ms. Palacio would have to be an employee of the brokerage Yellow Fin Realty rather than the undersigned's law firm even though the realtor commissions paid to Christie D. Arkovich and are added as income to the law firm. Brokerages typically do not have employee relationships preferring instead to have independent contractor relationships with their Realtors, including both brokerages under discussion in this case. So that would be next to impossible unless Ms. Arkovich would be permitted to hire Ms. Palacio as an independent contractor or employee of her law firm, not Yellow Fin Realty. Whether Ms. Arkovich hires Ms. Palacio as an employee or independent contractor should be a matter within the discretion for the law firm.

In conclusion, if the Realtor role is central enough to the bankruptcy estate and proceedings to be considered a "professional person" then the undersigned proposes that if necessary under Section 504, Ms. Arkovich would move her license to Charles Ruttenberg Realty and Charles Ruttenberg Realty as the solitary Broker would then pay its Realtors (Ms. Arkovich and Ms. Palacio) per its standard independent contractor agreements and any cooperating buyer's agent. In the event that is not permitted, then Ms. Arkovich proposes to hire Ms. Palacio as an independent contractor or employee.

II. **Whether there is a conflict of interest in Ms. Arkovich representing both the debtor in the underlying bankruptcy and the Estate in connection with a short sale?**

Bankruptcy courts have permitted the retention of special counsel who also represents the debtor in the underlying bankruptcy, provided the best interest of the estate is served, and the representation does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which the attorney is sought to be employed. *In re De Vlieg, Inc.*, 174 B.R. 497 (Bankr. N.D. Ill. 1998) (special counsel need not be disinterested). A law firm representing a creditor may also serve as special counsel to the debtor for a matter where they share common interests. *In re Midway Motor Sales, Inc.*, 355 B.R. 26 (Bankr. N.D. OH. 2006).

Section 327(e) provides that the trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed. 11 U.S.C. § 327(e) (2013).

The U.S. Trustee has raised two issues: 1) that there could be a possible conflict of interest in the future even if there is not one at present such as a debtor changing their mind about surrendering the property; and 2) that an unethical counsel could steer a debtor into using their wildcard exemption simply so the attorney could sell the home for a commission.

Both issues raise valid questions, but can be easily answered. First, adequate written disclosure can be provided to the client to require their signature explaining the benefits

and ramifications of choosing to exempt their homestead versus claiming the wildcard. The undersigned provides this document to her clients as a handout entitled "Door # 1 or Door #2" which they are required to sign before filing for all cases involving a homestead and has done this for a couple of years now. If there is any doubt in the client's mind as to retaining a home, they are encouraged to claim the homestead so that they remain in control of what happens to the house (i.e. pending modification of the first mortgage uncertainty). In the event that the client should change their mind and later want to claim the homestead as exempt, they have the ability to amend their exemptions fairly quickly before the trustee takes action to sell the property. After that, the property becomes property of the bankruptcy estate and it is no longer the debtor's choice. If a conflict should arise, the undersigned believes that the standard conflict of interest rules would prevail and that she should withdraw from all representation of both the trustee and the debtor. In that case, the undersigned would likely choose to refund a portion of the debtor's pre-petition retainer so that they can at least secure counsel to wrap up the case if needed.

As for the second concern of steering unsuspecting debtors to the sale of their home for the commissions, the commissions are not that large to be all that meaningful. Most of the contemplated home sales are in the range of $60,000 - $150,000. Second, the undersigned expects to receive an industry standard and reasonable commission for work performed. When an attorney recommends filing bankruptcy to a client, it is not presumed that the attorney is doing so merely for the fees. We do not prevent the filing of a bankruptcy by an attorney merely because the attorney earns a reasonable fee for the work performed.

Moreover, what would stop an attorney who is licensed as a Realtor from selling the home outside of the bankruptcy proceedings anyway pre-petition or after discharge? Why steer it through bankruptcy with potential oversight? Frankly, if this Court determines that the undersigned cannot represent both the debtor and the trustee in a short sale, the most likely outcome is that the trustee will abandon the house and the undersigned will sell it anyway as a traditional short sale with the client's permission. In fact, it would be far simpler and faster to do that on many fronts (no Rule 363 motion, no applications, no carve out negotiations). The other outcome is that the trustee does a phantom equity sale to an investor which would ultimately hurt this debtor's credit when the foreclosure completes unlike a short sale. In this case, it is unlikely that an investor would be interested because a final judgment of foreclosure was already entered at the time of the bankruptcy filing.

In the instant case, the debtors want to get the former homestead out of their names and have already moved out and given the keys to the undersigned. Like many debtors who surrender real property in a bankruptcy, they do not want the associated cost of ownership to follow them including water bills that cannot be turned off, home owners association assessments, code enforcement and slip and fall liability. Also, their credit is much better served in a short sale than a foreclosure sale with much shorter look back periods for available financing for a future home purchase. There are an untold number of debtors in the Tampa Bay area alone who have been tormented by an asset that continues to be a liability and is often vacant. Several of the larger banks have been notorious in recent years for dragging their heels in foreclosures, particularly for distressed properties or those with high HOA fees.

Wherefore, this Court should deny the objections by the United States Trustee and approve the applications for employment as Special Counsel and Realtors.

Respectfully submitted,

/s/ Christie D. Arkovich, Esq

Christie D. Arkovich, Esq.
Florida Bar No. 963690
Erin M. Allen Esq.
Florida Bar No. 0031383
Primary E-mail: cdalawtt@tampabay.rr.com
CHRISTIE D. ARKOVICH, P.A.
1520 W. Cleveland St.
Tampa, Florida 33606
(813) 258-2808
(813) 258-5911 (Facsimile)
Attorney for Trustee

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic transmission and/or regular U.S. Mail, postage prepaid this August 8, 2013, to:

Debtor Christian E. Sanon and Louise Marie Sannon, 1213 Belladonna Dr., Brandon, FL 33510
Beth Ann Scharrer, Chapter 7 Trustee, P.O. Box 4550, Seminole, Florida 33775
Asst. US Trustee, Timberlake Annex, 501 E. Polk Street, Suite 1200, Tampa FL 33602-3949.

/s/ Christie D. Arkovich            .
CHRISTIE D. ARKOVICH, ESQ.